24-720. Thank you. Mr. Idlibi, can you hear us? Yes, Your Honor, can you hear me? Mr. Butchick, can you hear us? Good morning, yes, Your Honor. Good morning. Okay. So Mr. Idlibi, you've reserved two minutes for a rebuttal, which means that you've got three minutes to tell us about your case. I'll just let you know that we've obviously read your submissions, so we're familiar, quite familiar with the case. But please proceed. Thank you, Your Honor. Please proceed. Thank you, Your Honor. Good morning. So briefly, Your Honor, I just would like to address, since everything, as you stated, is already in a breach, I'd like to address a few things that were raised in the defendants' brief that I had not got the chance to prepare. Very briefly, a few things. First of all, they claim that the district court considered the green exhibit, but actually it's very clear that the district court did not consider the green exhibit at all. On the court's decision, on footnote 35, the court specifies exactly what it relies on, which is what the defendant had objected to in document 31, and it specifies that page is 23-24. Now, document 31 was filed on August 11, 23. The green exhibit was filed, which is labeled exhibit B, on September 6, 23. At document 34, that's almost a month after. So that clearly indicates that the court did not consider the green exhibit at all, just by the sequence of the filings. The other thing, Your Honor, is they are claiming that they have abandoned the challenge, to challenge the court's decision to decline a jurisdiction of supplemental leasing, or the state claims. That's not correct, because on page 18 of my brief, I clearly claim that the district court erred in declining jurisdiction over state claims by exclusively relying on declining jurisdiction on Title VI and VII claims. So basically, the only reason why the district court did not reach the state claims is because it found that it has no jurisdiction over the federal claims. The decision hinges on that one thing, which is clearly argued and claimed in my brief. There are three different theories on discrimination that have three different pleading standards, and they're all claimed in this complaint. I have to make this clear, because one of them is discrimination, and the U.S. Supreme Court has rejected a heightened pleading standard in the case, in the 2002 case, Swerkiewicz. Swerkiewicz. Yes, correct. Thank you, Your Honor. And in that case, it found that mere compliance with Rule 882 is sufficient to plead discrimination. Now, the second pleading standard is selective enforcement. That's a lesser pleading standard than the class of one, and that's obviously already mentioned and specified in my brief. The third one, which is the highest pleading standard, the class of one, and I, you know, the complaint claims all those three, and I believe that all those three are met in the pleading and the complaint. The last thing, Your Honor, is they claim the only defense as far as the license suspension that they have raised is the statute of limitation. First of all, the statute of limitation is not subject matter jurisdictional. Second, the doctrine of equitable tolling, which is applied in both federal and Connecticut state courts, permits courts to extend a statute of limitation on case-by-case basis to prevent inequity or Section 1983 actions. And this is—the whole—this is a series of facts that, you know, all the allegations rely on the same set of facts. There is no, like, distinct or discrete action. They're all the same, based on the same set of facts. The other thing, Your Honor, is the—when you claim discrimination and then you attach that to the personal capacity claims, the Supreme Court, again, in the case of Forster v. White, had ruled that discriminatory acts are not judicial acts. So that's another issue as far as the lack of jurisdiction. Your Honor, the two clear points is that they're both undisputed. First of all, the defendants do not dispute that there is no finding of—or even a charge of clear and immediate damage to the public, yet they suspended lessons based on clear and immediate danger to the public. The second thing, the defendants do not dispute that there was no ever a finding of unskillfulness or unsafe practice, yet they placed me on probation for three years to monitor for skillfulness and unsafe practices. So— Mr. Libby, so I'll give you a little bit more time. Let's hear from Mr. Butchik, and then you'll have two minutes of rebuttal. Thank you. Good morning. May it please the Court. There are two issues in this case. I'm just going to focus on the second one since it was raised up, and that's the discrimination allegations. Essentially, Plankett hangs his hat on two allegations. One is that during the hearing in the first matter, he submitted his curriculum vitae, which showed that he was an immigrant from a predominantly Muslim Middle Eastern country. And the second is he said that at least—he alleged that at least one panelist expressed what, in his view, are negative views about immigrants from predominantly Muslim Middle Eastern countries. He does not, you know, let us know or allege what those views are, nor does he allege specifically that any panelist was aware of his Middle Eastern background or his immigration status. And the next important piece there is when he starts to cite comparators and whatnot, he doesn't talk about or allege any facts that allow us to give any nexus between those. He only alleges, in this instance, the negative views came from one panelist. And as the record reflects, there was a panel of three members, and there are a lot of other folks he's suing in this case as well who were not those members. There's the prosecutor who actually brought the charges, prosecuted them. There's also the attorney involved who provided representation to the panel. They're the other panel members. And then there's the commission, which issued the ultimate decision. And as pertains to the comparators, he doesn't talk about whether that panelist was actually a member of the subsequent panel or not. So we have really no plausibility between his fundamental so-called discriminatory allegations and actually any discriminatory conduct in this instance, nor anything to compare it to. He doesn't tell us anything about those comparators. He simply attaches a couple other exhibits. And when we look at those exhibits, we look at, in each case, there were charges brought, and the commission actually found standard of care violations. The only differences, such as there were, amounts in the remedy. And there's nothing in the record or his allegations that remotely suggest any impropriety regarding the scope of the remedy. In addition, with respect to the first issue that I skipped over, is the absolute judicial immunity. It's clear it applies in this case. It's a very straightforward application. All the individual defendants were involved in adjudicating the charges against Dr. Idlibi. There's the first case that provided for the probation, the sanctions of civil penalty. And then there was the second case, which was the violation of the order in the first case. He doesn't allege that it's the exact same panel or commission member composition. And, however, setting that aside for the moment, it's very clear that they were all involved in an adjudicatory capacity, not administrative tasks like employment decisions and things like that that have nothing to do with a judicial matter. And for these reasons and those expressed in our brief, and based on the merits of Judge Meyer's well-reasoned decision, we respectfully request that the court affirm. Mr. Idlibi, you've got a little time for rebuttal. Yes, thank you, Your Honor. First of all, the ethnic or the racial aspect is really not as relevant of the comparator as completely irrelevant, actually. So the counsel is stating that there's no specification on what is the racial or the ethnic background of the comparator, and that it's completely not required to plead classified or selective enforcement at all, even with discrimination. So that is completely irrelevant to the argument. The other thing, Your Honor, is that they stated in their brief that I lost the case in the state. That's just I'm being a state loser. That's not the case. I actually won two remands, and in those two remands, the court compelled the defendants to find that the treatment was proper, was appropriate, and within the standard of care. And the other thing is that he pointed out in the brief that the state litigation has concluded. It's obviously not concluded. And, in fact, they casually mentioned that there's still pending state litigation as to this case. And there's nothing else to – yeah, the lack of jurisdiction, Your Honor, as I mentioned in my brief, the statute that grants them jurisdiction over suspended license is Section 4-182C. And they have to, first of all, find that there is a clear and immediate danger or at least charge me something. They did not. Second, they have to notify me of the fact that there was something that could make me a clear and immediate danger to the public. They did not do that. So based on this statute, they had no jurisdictions under the license, so they acted in clear absence of jurisdiction. Are you currently employed as a dentist? I'm currently employed, Your Honor, yes, sir. All right. Well, thank you very much. We'll reserve the decision with that.